IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00242-KLM

AARON SCARBOROUGH,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss Under FRCP 12(b)(1) and Partial Motion for Summary Judgment Under FRCP 56** [#43][1] (the "Motion to Dismiss"). Plaintiff, who proceeds in this matter pro se,[2] filed a Response [#46], and Defendant filed a Reply [#49]. This matter is also before the Court on Plaintiff's **Motion for Requested Relief for Actual Damages, Personal Injury, and Emotional Harm in**

---

[1] "[#43]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

**Plaintiff's FTCA Claim** [#59] (the "Motion for Requested Relief").[3] The Court has reviewed the Motions, the briefing, the case record, and the applicable law, and is fully advised in the premises. For the reasons set forth below, the Motion to Dismiss [#43] is **GRANTED in part** and **DENIED in part**. To the extent that Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the Motion to Dismiss [#43] is **granted**. To the extent that Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56, the Motion to Dismiss [#43] is **denied as moot**.

## I. Background

Plaintiff initiated this lawsuit pro se on February 4, 2015. *Compl.* [#1]. Plaintiff is an inmate in a Special Management Unit ("SMU") program, which is located in the Charlie-Bravo Unit in the United States Penitentiary in Florence, Colorado ("USP Florence"). *Id.* at 2-6. Plaintiff alleges that on April 12, 2013, he was placed in a USP Florence recreation cage in handcuffs by Bureau of Prisons ("BOP") employees, and that another inmate who was later brought to the cage slashed him several times with a shaving razor. *Id.* at 3-4. Plaintiff received medical care for his injuries at the Community Hospital in Pueblo, Colorado for his injuries. *Id.* at 5.

Plaintiff filed this action alleging that Defendant's employees were negligent and that their negligence caused Plaintiff's physical injuries, which included cuts to his face, neck, and head. *Id.* at 5. He also alleges that he suffers nightmares and severe anxiety every

[3] Although Defendant has not responded to the Motion for Requested Relief [#59] and the time for doing so has not yet expired, the Court may rule on a motion at any time. *See* D.C.COLO.LCivR 7.1(d). Additionally, the Motion [#59] appears to be an extension of Plaintiff's briefing on the Motion to Dismiss [#43]. While the Motion for Requested Relief [#59] could be stricken as an improper sur-reply, it does not introduce any additional claims, defenses, or allegations that affect the Court's ruling.

time he enters a recreation cage. *Id.* Specifically, Plaintiff alleges that Defendant's employees were negligent in failing to: (1) collect shaving razors; (2) properly conduct a pat down and metal detector search; and (3) use sally ports.[4] *Id.* at 6-8; *Response* [#46] at 6-8. Plaintiff seeks compensatory damages. *Compl*. [#1] at 10. Additionally, Plaintiff requests further discovery regarding the use of sally ports. *Response* [#46] at 11.

On May 2, 2016, Defendant filed the present Motion to Dismiss [#43], arguing that the Federal Tort Claims Act ("FTCA") precludes subject matter jurisdiction over Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1). *Motion to Dismiss* [#43] at 1. In the alternative, Defendant argues that summary judgment should enter in Defendant's favor on Plaintiff's second claim pursuant to Rule 56 because there are no genuine issues of material fact. *Id.*

In his Response, Plaintiff does not address the 12(b)(1) standard, but instead applies the Rule 12(b)(6) standard. *Response* [#46] at 4-5. Nonetheless, given Plaintiff's pro se status, the Court will construe Plaintiff's arguments as his response to the FTCA discretionary function arguments that Defendant raises. *See Motion to Dismiss* [#43].

## II. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the court has jurisdiction to properly hear the case before it. Fed. R. Civ. P. 12(b)(1). Because "federal courts are courts of limited jurisdiction," the court must have a statutory basis to exercise its jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955

---

[4] A sally port is a secure enclosure situated in the perimeter wall or fence of a correctional facility. A sally port contains gates or doors at both ends, only one of which opens at a time, ensuring there will be no breach in the security of the fence. *Motion to Dismiss* [#43] at 2.

(10th Cir. 2002). Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts on which subject matter jurisdiction depends. *Id.* Therefore, the court must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987). The court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Wheeler*, 825 F.2d at 259.

## III. Analysis

### A. Plaintiff's Negligence Claims

As noted above, Plaintiff alleges that he was slashed multiple times with a shaving razor by another inmate while in a USP Florence recreation cage. *Compl.* [#1] at 3-4. Plaintiff alleges that Defendant was negligent in failing to: (1) collect the shaving razor

blade from the inmate who attacked him; (2) properly conduct a pat down and metal detector search on the other inmate; and (3) install and use sally ports. *Id.* at 6-8; *Response* [#46] at 6-8.

Defendant argues that it is entitled to sovereign immunity because Plaintiff's claims are subject to the discretionary function exception to jurisdiction under the FTCA, and that the Court therefore lacks subject matter jurisdiction. *Motion to Dismiss* [#43] at 1. Defendant correctly states that the party invoking federal jurisdiction – Plaintiff – bears the burden of proof on that issue. *Motion to Dismiss* [#43] at 10 (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)).

**B. Discretionary Function Exception Under the FTCA**

"[S]overeign immunity shields the [federal] government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature." *Id.* Thus, unless the government waives its immunity by consenting to be sued, courts lack subject matter jurisdiction to adjudicate claims asserted against it. *United States v. Mitchell*, 463 U.S. 206, 238 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The waiver of sovereign immunity cannot be implied, but rather must be unequivocally expressed. *Id.* at 219.

The FTCA waives the federal government's sovereign immunity from tort liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, a plaintiff must show more than mere negligence, and must show that his "claims are not based upon actions immunized from liability under the FTCA's

discretionary function exception." 28 U.S.C. § 2680(a); *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002). This exception applies when the plaintiff's claim against the government relates to "the exercise or performance or failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." *Elder*, 312 F.3d at 1176. Thus, a plaintiff must show that the alleged offending conduct did not involve discretionary functions in order to avoid dismissal under Rule 12(b)(1). *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998).

Courts employ the two-pronged test set forth in *Berkovitz v. United States* in order to determine whether the discretionary function exception applies: (1) whether there was a prescribed course of action; and (2) whether the action was of the kind that the discretionary function exception was designed to shield. 486 U.S. 531, 536 (1988).

Regarding the first *Berkovitz* step, courts consider whether the challenged conduct involved an element of judgment or choice, which would trigger the discretionary function exception. If the conduct involved a federal statute, regulation, or policy that specifically prescribed the employee's course of action, the discretionary function exception would not apply because the employee would have no choice but to follow the directive. *Elder*, 312 F.3d at 1176 (citing *Berkovitz*, 486 U.S. at 536). When the prescribed course of action is both specific and mandatory, the discretionary function exception does not apply. *Aragon*, 146 F.3d at 823; *see, e.g.*, *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1540 (10th Cir. 1992) (finding that general health and safety provisions involved discretion because they were not "specific and mandatory directives").

If the conduct involved discretionary judgment under the first step of *Berkovitz*, then courts "must apply the second step, which requires them to determine whether that

judgment is the kind that the discretionary function exception was designed to shield." 486 U.S. at 536. The Tenth Circuit Court of Appeals has held that the second step is satisfied if the offending action "implicates the exercise of a policy judgment of a social, economic or political nature." *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1411 (10th Cir. 1997).

**1. Shaving Razor Collection Claim**

Plaintiff's first claim is that the SMU officers "had a duty to collect, inspect, account for and dispose of disposable razors issued to inmates before the end of their shift," and that the failure to do so resulted in his "permanent physical disfigurement and emotional harm." *Complaint* [#1] at 6.

To determine whether this claim should be dismissed under Rule 12(b)(1), the Court must address whether the discretionary function exception applies. *See Berkovitz*, 486 U.S. at 536. Regarding the first prong of the *Berkovitz* test, Defendant argues that its employees' actions were discretionary because Plaintiff "has not identified, and cannot identify, an applicable statutory, regulatory, or policy directive that removes . . . [BOP] personnel's exercise of judgment or choice in connection to the challenged conduct." *Motion to Dismiss* [#43] at 2. Plaintiff responds that the collection of shaving razors is mandatory and does not involve discretion. *Response* [#46] at 3-4. In support of his argument, Plaintiff cites the SMU Inmate Handbook, which provides: "Inmates will be issued new, disposable razors when hygiene items are issued. All razors will be collected, inspected, accounted for and disposed of by SMU staff before the end of the shift." *Id.* Plaintiff asserts that the SMU Inmate Handbook language that the razors *will be collected* is specific and mandatory, and therefore does not involve any element of discretion. *Id.* at 6-7.

In support of his argument, Plaintiff cites to *Gray v. United States*, 486 F. App'x 975 (3rd Cir. 2012), a factually similar case in which a prisoner claimed that a federal employee was negligent in failing to collect a shaving razor blade from an inmate who later attacked the plaintiff. The plaintiff in *Gray*, like Plaintiff here, relied on language in the SMU Inmate Handbook that says that "[a]ll razors will be accounted for and disposed of at the end of the shower." *Id.* at 978. The Third Circuit allowed the claim against the defendant to proceed because the court found that the policy that razors "will be" collected did not afford discretion, since the task of collecting razors did not involve elements of judgment or choice. *Id.*

While cases from other circuits may be persuasive, the Court is not inclined to follow the Third Circuit in this instance. First, the Tenth Circuit has previously stated that manuals do not necessarily have the same force and effect as statutes and other sources of law, even if they provide a specifically prescribed course of action. *See Aragon*, 146 F.3d at 824 (holding that an agency manual is not necessarily entitled to the force and effect of law for purposes of the discretionary function exception). Second, the Court is persuaded by Defendant's argument that the SMU Inmate Handbook is not sufficiently specific to mandate a course of action, since the "manner and method" of how the razors are to be collected is not addressed. *See Reply* [#49] at 4, 8; *Berkovitz*, 486 U.S. 536. For example, Defendant cites to part of Plaintiff's deposition transcript in which Plaintiff admits that he has managed to keep a razor blade in his possession by switching out the blade of a disposable shaving razor with the shiny portion of a potato chip bag.[5] [#43-1] at 47-48.

---

[5] On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court has wide discretion to consider evidence – without converting the motion into a motion for summary

Thus, not only is the method of collecting the disposable shaving razors not specified, but Defendant has highlighted that the policy does not clarify how its employees are to inspect the individual blades. *Reply* [#49] at 8. The Court therefore finds that Plaintiff has failed to demonstrate that Defendant's employees lacked discretion in how they collect shaving razors.

Because the Court finds that the conduct involved discretionary judgment, it now turns to the second prong of *Berkovitz*. 486 U.S. at 536-37. To meet this standard, Plaintiff bears the burden of demonstrating that Defendant's conduct did not depend on considerations of public policy, which include security, safety, cost, health, and staffing considerations. *See id.*; *Duke*, 131 F.3d at 1411.

In the Complaint, Plaintiff acknowledges the inherent security concerns in the SMU program, describing it as a program for "violent and disruptive inmates." *Complaint* at 6. In that setting, BOP employees must make decisions concerning when and how to provide and collect shaving razors, which requires balancing the competing interests of providing hygiene tools to the inmates and ensuring a safe environment. *Motion to Dismiss* [#43] at 18. As stated in *Ortiz*:

> [T]he decision as to whether to make razor blades available to inmates for shaving is, as plaintiff acknowledges in his complaint, a security decision, and implicates many of the same policy considerations as the decisions of how to house and whether to monitor particular inmates, including inmate safety, general prison security, the interests of inmates and the institution in maintaining good standards of hygiene, and the effective use of limited resources . . . . Therefore, under the discretionary function exception, this Court lacks subject matter jurisdiction over plaintiff's claim.

---

judgment – in order to make findings regarding disputed jurisdictional facts. *See Wheeler*, 825 F.2d at 259.

*Ortiz*, 2002 WL 1492115, at *4; *Graham v. United States*, No. Civ. 97-1590, 2002 WL 188573, at *4 (E.D. Pa. Feb. 5, 2002) (holding that the discretionary function exception applied to a claim of negligent distribution of shaving razors because the decision involved public policy considerations), *aff'd*, 47 F. App'x 198 (3d Cir. 2002). Similarly, the decision of how to *collect* shaving razors falls within the purview of policy considerations, as a matter of law, as it involves prison security.

Therefore, the Court finds that the discretionary function exception to the FTCA applies to Plaintiff's shaving razor collection claim. Thus, the Court lacks subject matter jurisdiction and Plaintiff's first claim is therefore **dismissed without prejudice** pursuant to Rule 12(b)(1). *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (stating that dismissal for lack of jurisdiction must be without prejudice).

**2. Pat Down and Metal Detection Search Claim**

Plaintiff initially alleged in his Complaint that Defendant "did not pat search or scan the inmate with a metal detector before placing the inmate into [the] recreation cage . . . ." *Complaint* [#1] at 4. However, Defendant cites to the Declaration of Jason Karschnik, in which he states that he personally conducted the pat down and metal detection search on the other inmate before escorting him into the recreation cage. *Decl. of Jason Karschnik* [#43-4] at 2-3. Likely due to the contents of that Declaration, Plaintiff changes his allegation in his sworn Response:

> Before moving inmate Solano-Moreta to recreation cage #11 that day, Jason [Senior Officer Specialist] conducted a thorough pat search of Solano-Moreta. Jason's search included the body of Solano-Moreta across his arms, chest, back, down each of his legs, and around his waist area. Jason also instructed Solano-Moreta to open his mouth and lift his tongue at which time Jason looked to verify that he was not carrying anything in his mouth. After

> his pat search, Jason searched Solano-Moreta with a metal detector. Jason's metal detector search of Solano-Moreta included running the hand-held wand in close proximity to his body, over his arms, chest, legs, back, and over his head from the front over the top and down his neck in the back.

*Response* [#46] at 2-3. Thus, Plaintiff now concedes that the BOP employee *did* conduct the necessary searches on the inmate who attacked Plaintiff, and instead argues that the searches were not conducted properly. *Response* [#46] at 7.

The Tenth Circuit has interpreted the first prong of *Berkovitz* to mean that whatever directive is at issue must leave no discretion to the parties regarding how to act. *Garcia v. United States Air Force*, 533 F.3d 1170, 1174 (10th Cir. 2008). In terms of the actual directive itself, the plaintiff must show that the federal employee violated a federal statute, regulation, or policy that is both specific and mandatory. *Elder*, 312 F.3d at 1176-77; *Aragon*, 146 F.3d at 823. A directive to take a general type of action or to meet an objective, without more, is insufficient. *See Garcia*, 533 F.3d at 1178 (holding that a rule that "requires Air Force roofing inspectors to monitor the work of all roofing contractors" was not sufficiently specific to meet the first *Berkovitz* prong); *see also Duke*, 131 F.3d at 1410 (finding that manuals "emphasiz[ing] safety and appropriate warnings [were not] sufficient enough to eliminate Forest Service employee's choice regarding how to act in particular circumstances). When addressing claims of negligent pat down and metal detection searches, other courts have found that the discretionary function exception applies because officers maintain discretion in how to conduct the searches. *Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002) (finding that the discretionary function exception applied to BOP staff decisions concerning how to conduct a cell search); *Pupo-Leyvas v. United States*, No. 2:08-cv-00344, 2010 WL 3782183, at *6 (S.D. Ind. Sept.

20, 2010) (applying the discretionary function exception to searches because the policy did not specify the manner in which such pat down searches were to be conducted); *Hooker v. United States*, No. 11 Civ. 2840, 2013 WL 3491089, at *7 (S.D.N.Y. July 12, 2013) (finding that the discretionary function exception applied to a pat down and wand search because the manner and speed of search were discretionary).

Plaintiff relies on the SMU Operations Manual to support his claim that BOP employees negligently conducted a pat down and metal detection search. *Response* [#46] at 4. Plaintiff quotes the SMU Operations Manual as stating, "The purpose of this institutional supplement is to provide operating procedures for the Special Management Unit (SMU)." *Id.* Further, Plaintiff quotes the manual as saying, "When an inmate is moved from a secure area, at a minimum, staff will apply hand restraints (double locked), conduct a pat search and utilize a hand held metal detector." *Id.* Defendant recognizes the BOP policies as applicable to the SMU. *Motion to Dismiss* [#43] at 19. Defendant also recognizes that the BOP policies require staff to conduct a pat down and metal detection search before escorting an inmate to recreation. *Id.* at 4-5. However, as in *Pupo-Leyvas*, the policies leave ample room for discretion in how to conduct these searches, given that the Manual does not specify how a search is to be conducted, the length of the search, nor what the official is searching for. *See Pupo-Leyvas*, 2010 WL 3782183, at *6. Thus, Plaintiff's citation to the SMU Operations Manual is inapposite because it does not provide a specific and mandatory directive. *See Hooker*, 2013 WL 3491089, at *7.

Defendant further cites to the Correctional Services Manual to show the lack of directives regarding how to conduct a pat down search: "The Warden may install metal detection devices within the institution as necessary for the control of contraband. A metal

detector search may be done in addition to the pat search. Any pat search shall be conducted as outlined in the Correctional Services Manual." *See Motion to Dismiss* [#43] at 20. Defendant also cites 28 C.F.R. § 552.11, titled "searches of inmates":

> Pat Search. An inspection of an inmate, using the hands, that does not require the inmate to remove clothing. The inspection includes a search of the inmate's clothing and personal effects. A metal detector search may be done under the same circumstances. Staff may conduct a pat search of an inmate on a routine or random basis to control contraband.

*Motion to Dismiss* [#43] at 20. The Court concludes that Plaintiff has failed to meet the first prong of *Berkovitz* because both the Correctional Services Manual and the SMU Operations Manual allow BOP officers discretion in how they conduct pat downs and metal detection searches. *See Elder*, 312 F.3d at 1176-77; *see also Aragon*, 146 F.3d at 819.

Because the pat down and metal detection search involved discretionary judgment, the Court next considers whether that judgment involved public policy considerations. *See Berkovitz*, 486 U.S. at 536; *Duke*, 131 F.3d at 1411. Even construing Plaintiff's claims broadly, Plaintiff has not provided any facts or law to support a finding that these discretionary actions were not grounded in public policy. In fact, it is apparent that methods of conducting pat down and metal detection searches involve safety concerns.

Therefore, the Court finds that the discretionary function exception to the FTCA applies to Plaintiff's pat down and metal detector search claim. Thus, the Court lacks subject matter jurisdiction and Plaintiff's second claim is therefore **dismissed without prejudice** pursuant to Rule 12(b)(1). *See Brereton*, 434 F.3d at 1216.

### 3. Sally Port Claim

In support of Plaintiff's third claim, he states, "At the time of this attack on my person

USP Florence was a SMU program for violent and disruptive inmates. Despite this fact, and the numerous prior attacks on restrained inmates in the recreation cages, there were no sally ports installed in the recreation cages." *Complaint* [#1] at 8. Plaintiff alleges that the failure to install sally ports was negligent and directly resulted in the harm to Plaintiff. *Id.* He does not respond to Defendant's assertion that the Court lacks subject matter jurisdiction because the discretionary function exception applies to this claim. *See Response* [#46] at 11. Nonetheless, considering Plaintiff's pro se status, the Court considers whether there is jurisdiction.

With respect to the first prong of *Berkovitz*, Plaintiff's general assertion that Defendant failed to design the recreation cages to include sally ports is not based on a specific and mandatory directive. He does not, for example, cite to any statutes, or other mandatory authority supporting his argument that the Defendant was required to install sally ports. *See Berkovitz*, 486 U.S. at 536; *Complaint* [#1] at 6. Moreover, Plaintiff fails to specify how installation and use of a sally port would have prevented his injury.

Defendant argues that "when and how to design outdoor recreational cages at a high-security prison such as USP Florence" is a discretionary decision, given that there are no policies dictating whether or not sally ports must be used in outdoor recreational cage design. *Motion to Dismiss* [#43] at 29-30. Again, the Court has wide discretion to consider evidence on considering whether a claim should be dismissed pursuant to Rule 12(b)(1). *See Wheeler*, 825 F.2d at 259. Here, Defendant supports its point that Plaintiff has not provided any relevant authority showing that Defendant was required to install sally ports with a quote from Plaintiff's deposition where Plaintiff stated, "I don't have facts to back that up, I don't have no policy or nothing." *Id.*; [#43-1] at 11. Further, Defendant includes a

declaration from the employee who designed the recreation cages where the attack occurred, engineering technician Harvey Wall ("Wall"). *Motion to Dismiss* [#43] at 29; *Decl. of Wall* [#43-2]. Mr. Wall discusses the policies and guidelines that he referred to while designing the recreation cages, none of which mandated the use of sally ports. *Wall Decl.* [#43-2] ¶ 11, 13. Lastly, Mr. Wall states that the decision of whether or not to use sally ports is subject to the discretion of the warden or institutional captain of a facility. *Id.* ¶ 15. In light of Plaintiff's failure to identify any relevant policies and Defendant's undisputed evidence, Plaintiff has not met his burden of providing a specific and mandatory directive regarding the use of sally ports.

Under the second step of *Berkovitz*, Plaintiff bears the burden of demonstrating that the offending action did not implicate the exercise of a policy judgment of a social, economic or political nature. *Duke*, 131 F.3d at 1411. Plaintiff does not provide facts or law to support this conclusion. Defendant provides some information on the policy analysis that the prison underwent to determine whether or not to use sally ports. Defendant alleges, "Mr. Wall took into account various standards and guidelines which addressed accessibility, life safety, prison operations, employee heath and safety and other considerations." *Motion to Dismiss* [#43] at 30-31. Defendant adds that Mr. Wall considered:

> the space available for building the recreation cages and the number of cages [he was] asked to include in the design; the visibility of the inmates when inside the closed area; the proximity of the recreation area to the unit where the inmates are housed and the efficiency of movement between the unit and the recreation area; the safety of the officers and inmates who will use the recreation cages; the budget for the construction of the recreation cages; whether the recreation cages will be used by inmates with disability needs; how many inmates will be using the cages at one time.

*Id.*; *Wall Decl.* [#43-2] ¶ 12. Thus, the design of the recreational cages involved exercise of a policy judgment on social and economic concerns, and therefore was the kind of judgment that the discretionary function was designed to shield.

Therefore, the Court finds that the discretionary function exception to the FTCA applies to Plaintiff's sally port claim. Thus, the Court lacks subject matter jurisdiction and Plaintiff's third claim is therefore **dismissed without prejudice** pursuant to Rule 12(b)(1). *See Brereton*, 434 F.3d at 1216.

**C. Plaintiff's Request for Additional Discovery**

Whether to extend or reopen discovery is committed to the sound discretion of the trial court. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). Relevant factors that may be weighed in deciding whether or not to reopen discovery include: (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; and (5) the likelihood that the discovery will lead to relevant evidence. *Smith*, 834 F.2d at 169. (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1213 (3rd Cir. 1984); *Wilk v. Am. Med. Ass'n*, 719 F.2d 207, 232 (7th Cir. 1983); *Geremia v. First Nat'l Bank of Boston*, 653 F.2d 1, 5-6 (1st Cir. 1981).

The discovery deadline in this case was February 29, 2016. Plaintiff requests the opportunity to engage in further discovery regarding BOP policies on sally ports. *Response* [#46] at 11. Defendant opposes any additional discovery because "Plaintiff has had ample opportunity to conduct such discovery, but was not diligent in doing so." *Reply* [#49] at 12. Defendant claims granting Plaintiff's request will result in prejudice. *Id.*

First, Plaintiff failed to comply with Local Rule 7.1(d), which states that "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d). Plaintiff's request may be denied on this basis alone. Additionally, Plaintiff has failed to show that he was diligent in his efforts to obtain the necessary information within the applicable case discovery deadlines. The original discovery deadline was February 29, 2016. [#29]. Defendant's motion to extend the discovery deadline was granted [#41], and the deadline was extended to March 24, 2016. [#42]. Plaintiff did not even request additional discovery until more than two months later. [#46]. It was foreseeable that additional discovery would be necessary prior to the expiration of the deadline, and there is no showing that Plaintiff made any effort to conduct discovery on this issue after his initial receipt of documents from Defendant in October of 2015. [#32]. Moreover, it is sufficiently unclear that the proposed discovery is likely to result in evidence relevant to Plaintiff's claims. Fed. R. Civ. P. 26(b)(1). Therefore, Plaintiff's request to reopen discovery is **denied**.

**D. Lack of Subject Matter Jurisdiction Pursuant to the Applicability of the Discretionary Function Exception under the FTCA**

Lastly, the Court addresses Defendant's argument that Plaintiff's claim regarding the pat down and metal detection searches should be dismissed pursuant to Rule 56, in the event that it survives the motion to dismiss pursuant to Rule 12(b)(1). *See Motion* [#43] at 9. Because the Court has determined that it lacks subject matter jurisdiction over all three of Plaintiff's FTCA claims due to the application of the discretionary function exception, the Court need not reach Defendant's Rule 56 argument. Indeed, in the absence of subject matter jurisdiction, the court lacks the power to enter judgment. *Muscogee (Creek) Nation*

*v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012); *Arocho v. Lappin*, 461 F. App'x 714, 2012 WL 401515 (10th Cir. 2012) ("Absent the power to proceed to an adjudication, a court must dismiss without prejudice because it cannot enter a judgment on the merits."). Accordingly, to the extent that Defendant requests entry of summary judgment, the Motion to Dismiss [#43] is **denied as moot**.

**IV. Conclusion**

Accordingly, for the reasons set forth above,

IT IS HEREBY **ORDERED** that, to the extent that Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the Motion to Dismiss [#43] is **GRANTED**. Plaintiff's Amended Complaint [#10] is **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that to the extent that Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56, the Motion to Dismiss [#43] is **DENIED as moot**.

IT IS FURTHER **ORDERED** that Plaintiff's Motion for Requested Relief [#59] is **DENIED**.

Dated: March 17, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge